IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRIS OROSCO, Personal Representative
of the Wrongful Death Estate of
MICHAEL ROSS OROSCO, deceased,

    Plaintiff,

v.                                                        No. 2:21-cv-01007-WJ-GJF

DARLA BANNISTER, MARLENA
PELL, and RHONDA BRYANT,

    Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE**
**SECOND AMENDED COMPLAINT**
**and**
**DENYING MOTION TO DISMISS (DOC. 13) WITHOUT PREJUDICE AS MOOT**

THIS MATTER comes before the Court upon Plaintiff's Motion for Leave to File Second Amended Complaint, filed January 21, 2022 **(Doc. 21)**. Having reviewed the parties' briefs and applicable law, the Court finds that Plaintiff's motion is well-taken; accordingly, it is GRANTED. In light of the Court's ruling on Plaintiff's motion to amend, the Court also DENIES the Motion to Dismiss filed by Defendants' Pell and Bryant **(Doc. 13)** without prejudice based on mootness.

## BACKGROUND

Michael Orosco ("Michael") was incarcerated as a pretrial detainee in the custody and care of the Eddy County Detention Center (hereinafter "ECDC") from December 4, 2018, until April 26, 2019. Defendant Darla Bannister is a nurse practitioner and Medical Director of ECDC who provided health care services to inmates at the facility, including Michael. Defendants Marlena

Pell and Ronda Bryant are registered nurses who provided medical services to inmates at ECEC, including Michael.  All three Defendants are being sued in their individual capacities.

The complaint was filed in federal court on October 18, 2021 by Michael's personal representative Chris Orosco ("Chris" or "Plaintiff") and alleges claims for wrongful death and damages caused by the violation of Michael's civil rights under the Eighth and Fourteenth Amendments to the United States Constitution and professional negligence under state law.  The current amended complaint (Doc. 7) asserts two counts:

> Count 1: Violation of Due Process Rights to Adequate Medical Care Protected by the Eighth and Fourteenth Amendments; and
>
> Count 2: Negligent Provision of Medical Care (Defendant Bannister)

## I.     General Allegations

The current amended complaint (Doc. 7) chronicles the saga of Michael's deteriorating health condition—esophogeal cancer—while he was in custody at ECDC.[1]  Michael presented at various times with symptoms of esophageal cancer which increased throughout the first two months of his incarceration, including difficulty eating, vomiting and severe weight loss.  His untreated cancer reached the level where he had lost 40 pounds, was vomiting and defecating blood, had constant and severe coughing, and was unable to eat solid food of any kind.  Defendants diagnosed Michael with hypothyroidism, dysphagia (difficulty swallowing), and gastroesophageal reflux disease ("GERD").  During this time, Defendants gave Michael over-the-counter medications for treatment, but they did not physically assess him on any of his visits to the health facility.

---

[1] The current amended complaint (Doc. 7) contains 320 factual allegations and the proposed second amended complaint (Doc. 21-1) contains 385 allegations. The short description of the allegations provided by the Court here is meant only to provide some context for a discussion on Defendants' objections to Plaintiff's request to amend the complaint.

On April 11, 2019, Michael was transported to the Carlsbad Medical Center for a colonoscopy and an upper GI bleeding consult, where doctors found a cancerous growth in his esophagus so large as to block off entry into the stomach. After Michael returned from the hospital to ECDC, Defendant Bannister performed a physical assessment of Michael for the first time. At ECDC, Michael was moved to segregation and placed on 15-minutes watches because of his recent blood transfusion at the hospital, but there are no logs indicating he was checked at all.

On April 26, 2019, Michael was transferred to the New Mexico Corrections Department and was housed at the Central New Mexico Correctional Facility ("CNMCF") to serve the remainder of his sentence. Plaintiff alleges that the transfer was carried out so that the county would no longer be responsible for the cost of care provided to Michael. None of Michael's medical records were provided to CNMCF, contrary to standards set by the National Commission on Correctional Health Care.

On June 21, 2019, Michael's family was notified that Michael was seriously ill and in a critical condition. On June 28, 2019, Michael died at UNMH from complications caused by metastatic esophageal carcinoma.

Defendants Pell and Bryant ("Defendants" for purposes of this motion) have filed a Motion to Dismiss the current complaint (Doc. 13), which is pending before the Court for ruling.[2]

## II. Relevant Law

The grant or denial of leave to amend under Fed.R.Civ.P. 15(a) is a matter within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 330 (1971); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Although leave to amend is generally freely

---

[2] Plaintiff filed an Amended Complaint on December 6, 2021 (Doc. 7). Defendant Bannister has filed an Answer to the Amended Complaint (Doc. 12), but in lieu of filing an Answer, Defendants Pell and Bryan have instead filed a motion to dismiss (Doc. 13).

granted, a trial court's refusal to grant leave to amend should normally be justified on such factors as futility of the amendment, a showing of undue delay, undue prejudice to the non-moving party, or bad faith or dilatory motive of the moving party. *Frank v. U.S. West*, 3 F.3d 1357, 1365 (10th Cir.1993). Also, where the party seeking amendment "knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Id.*

## DISCUSSION

The proposed second amended complaint (Doc. 21-1, "proposed complaint") also contains a federal claim of due process and a state law negligence claim. Plaintiff explains that it: (1) clears up ambiguities with respect to allegations made involving "medical staff" and "vital signs"; (2) adds allegations involving Defendants Pell and Bannister regarding their job duties and standard of care as registered nurses; (3) provides greater specificity as to the decedent's prior history at the Eddy County Detention Center, including Defendants' prior knowledge of the decedent's serious medical conditions; (4) clarifies the timeline as to actions taken, or not taken by Defendants; (5) removes a reference to Eddy County as a Defendant; and (6) makes minor clerical corrections to the numbering of paragraphs contained in the Amended Complaint. Plaintiff contends that these changes pose no prejudice to Defendants and that the request is timely, noting that the Rule 16(b) Scheduling Conference has not yet taken place.

**I.     Timeliness and Prejudice**

Defendants make no timeliness objection but they claim that Plaintiff's request to amend prejudices them because it is simply an attempt to avoid a decision on the merits of their motion to dismiss which will increase the cost of this litigation. The Court assumes the increased "cost of litigation" refers to the fact that a new complaint would require a re-filing of their motion to

dismiss. However, the Court does not consider the need to re-file a motion to dismiss as causing prejudice sufficient to warrant a denial of a plaintiff's motion to amend without a showing of bad faith or dilatory motive. There is evidence of neither here, and so the prejudice objection is without merit.

**II.     Futility**

Defendants' opposition to Plaintiff's motion is based largely on the contention that the "new" and "additional" facts are futile because they fail to sufficiently allege a claim under Fed.R.Civ.P.12(b)(6). A court may properly deny leave to amend if amendment would prove futile, where it is patently obvious that the plaintiff could not prevail on the facts alleged. *Phillips v. Pub. Serv. Co. of New Mexico*, 58 F. App'x 407, 409 (10th Cir. 2003).

The futility inquiry necessarily requires the Court to consider whether the amended complaint contains sufficient factual matter, accepted as true to "state a claim to relief that is plausible on its face." *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151 (10th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility" if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A plaintiff must allege sufficient facts to "nudge[] [his] claims . . . across the line from conceivable to plausible." *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570).

The Court finds that Plaintiff's proposed amendments are not futile. Defendants call for a presentation of facts in the proposed complaint beyond what is necessary to meet the *Iqbal-Twombly* plausibility standard.[3] *See VDARE Found.,* 11 F.4th at 1159 (the plausibility standard

---

[3] A proposed amendment is considered futile if it is subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment. *Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001). This is not to say that the level of factual detail required at the summary judgment stage must be present in a complaint (which corresponds to Defendants' insistence on additional but unnecessary factual detail) but rather that a claim must

5

is not a probability requirement; it asks "for more than a sheer possibility that a defendant has acted unlawfully") (quoting *Twombly*, 550 U.S. at 556).  Some examples follow:

(1)     Defendants point out that the proposed complaint mentions that Michael had abdominal pain and was coughing up blood, *see* Doc. 21-1, ¶227 but his March 2019 request for medical care does not mention these particular symptoms, Resp. at 2-3.  The Court rejects Defendants' contention that the proposed amended complaint is deficient because it does not reference every health care request specific to every one of Michael's symptoms.  The *Iqbal-Twombly* standard requires only enough information to support a plausible claim, and the proposed complaint meets that standard.  There will be a time during the course of this litigation when Plaintiff will be expected come forth with hard evidence to support his allegations, but that time is not now at the early pleading stage.

The complaint does include references to several instances when Michael requested medical attention. *See* Doc. 21-1, ¶74 (December 2018 sick call request for sinus problem and allergies); ¶88 (January 2019 sick call request for burning sensation in chest). The proposed complaint also states that Michael "frequently complained to medical staff, including Defendants Pell and Bryant, that he could not eat and the problem had been going on for months. ¶107.  In mid-March 2019, Michael submitted a medical request form stating:

> I am having daily problems with the digestion of food. The food
> doesn't want to go down to digest I am continually throwing it back
> up. I find I can't swallow nor breathe with it blocking my passage,
> causing me to throw up. Need to see doctor please, thanks.

---

be dismissed as futile if additional facts and evidence that would be offered at summary judgment would not save the claim. *See, e.g., Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 561–62 (10th Cir. 1997) (concluding that plaintiff still failed to state a claim under the Establishment Clause claim after considering allegations in the amended complaint together with affidavits, deposition transcripts and exhibits presented by both parties). Thus, the only question here is whether the allegations in the proposed complaint sufficiently meet the *Iqbal-Twombly* standard.

Doc. 21-1, ¶¶121-122.  On March 23, 2019, Defendant Pell declined the request and instead ordered Michael a 48 hour "clear liquid diet and see if that helps you." ¶123.  None of the Defendants, or any other health care staff, conducted a medical assessment of Michael before he was placed on the diet, and Michael continued to throw up blood even after he was put on the special liquid diet.  ¶126, 137.

The proposed complaint also states that when Michael started throwing up blood, an inmate in his pod told Michael that he "should leave the blood in the toilet to show the nurses" and that the inmate helped get the nurses, "including Pell and Bryant" to look at the blood. ¶¶135-136.  Defendants Pell and Bryant said they would schedule a doctor's appointment for Michael, but an examination was never done, and diagnostic tests were not ordered.  ¶¶137-138. Defendants view this last-described incident as a "bald assertion without any actual facts" because neither the date of the incident nor the inmate's name is provided.  Both objections are specious.  The three hundred eighty-five factual assertions in the proposed complaint are presented in chronological order, which indicates rather obviously that the incident occurred in late March 2019.  And there is no requirement that all individuals referenced in a complaint must be identified by name from the beginning of the case.  *Cmp., e.g., Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996) (plaintiff may use unnamed defendants "so long as the plaintiff provides an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served").

In a similar vein, Defendants claim that the allegation "Michael had been informing medical staff, including Defendants Pell and Bryant, of these exact symptoms [trouble swallowing, vomiting blood] for months before anything was done," *see* ¶246, is not sufficiently specific.

7

Again, the chronological arrangement of the allegations provides ample notice to Defendants regarding the relative time of the alleged conduct.

(2)     Defendants contend that Plaintiff's allegations based on non-compliance with ECDC policies and procedures cannot form the basis of a cognizable constitutional claim and should be dismissed. *See, e.g.,* Doc. 21-1, ¶36 (The following day, December 5, 2018, Defendant Bannister prescribed medications for alcohol withdrawal without personally examining Michael in violation of ECDC's policies and procedures."). *See Tanberg v. Sholtis,* 401 F.3d 1151, 1160 (10th Cir. 2005) (officer's alleged violation of standard operating procedure would not create violation of clearly established constitutional right).

Defendants are correct: Plaintiff cannot pursue a constitutional claim based solely on a violation of ECDC policy. However, viewing the allegations in the proposed complaint as true, the Court finds it would be premature to deny Plaintiff's motion to amend because of references in the complaint to Defendants' failure to follow ECDC policy.  Plaintiff is not asserting a separate constitutional claim for violations of ECDC policy and the Court declines to reject a claim where it is unclear if it is being raised in the first place. Also, the proposed second amended complaint asserts claims of due process and negligence, and the factual allegations in that pleading (for example, Defendant's alleged failure to physically assess Michael despite his requests for medical care) could plausibly support both of those legal theories.

(3)     Defendants argue that the proposed "new" facts contain insufficient information—for example, the proposed complaint fails to state exactly when Defendants allegedly administered medication for Michael and made their observations of Michael. However, Defendants' objections make little sense where Plaintiff is alleging deprivation of medical care based on Defendants' *failure* to observe or respond appropriately to Michael's medical needs:

- Defendant Bannister deliberately violated that standard of care when she didn't make any observations of Michael or take his vital signs.

- As registered nurses, Defendants Pell and Bryant were responsible for the administration of medication to detainees at the jail.

- Both Defendants Pell and Bryant personally saw Michael when they administered his daily medication over the next four months.

- Defendant Bryant knew the standard of care required an assessment of the health status of Michael, including her observations of Michael as well as his vital signs, including weight, blood pressure and temperature.

- Defendant Bryant deliberately violated that standard of care when she didn't make any observations of Michael or take his vital signs.

- Defendant Pell knew the standard of care required an assessment of Michael's health status, including her observations of him as well as his vital signs.

- Defendant Pell deliberately violated that standard of care when she didn't make any observations of Michael or take his vital signs.

Doc. 21-1, ¶¶81, 85, 86, 92, 93, 321, 322.  Defendants' objections simply do not constitute grounds for denying Plaintiff's motion to amend.

(4)     Finally, Defendants contend that Plaintiff does not present well-pled allegations that Defendants Pell and Bryant knew that Michael was suffering from cancer and then failed to follow the orders given to them for his condition. Doc. 27 at 7.  The Court disagrees with this contention.  The allegations in the proposed complaint form the basis for a plausible claim that Defendants knew or should have known about Michael's medical condition:

- Defendant Bannister did not address Michael's elevated blood pressure or schedule him for follow-up; crossing out "Schedule for a physician office visit."

- The medication administration record . . . shows that Michael did not receive the prescribed medications as ordered or the required monitoring protocol.

- Despite having a history of hypertension, hypothyroidism and Hepatitis C, Michael did not receive any chronic care visits, physical exams, or further monitoring of his serious medical conditions during the entire time he was incarcerated.

9

- Defendant Bannister had deliberately allowed her patient to suffer for over four months without treatment for his life-threatening condition.

- Defendants' intentional, reckless, careless, and/or negligent conduct from January 2019 through April 2019, resulted in Michael's cancer metastasizing.

- Defendants knew, or should have known, that persistent vomiting, coughing up blood, rectal bleeding, and significant weight loss are all symptoms indicative of a serious medical condition that left untreated, will result in death.

- On December 31, 2018, Defendant Pell, without examining Michael and taking his vital signs, responded to Michael's sinus allergies complaint by indicating that she would order over the counter allergy medication.

- Defendant Pell deliberately violated [the] standard of care when she didn't make any observations of Michael or take his vital signs.

- Defendant Bannister knew the standard of care required an examination of Michael, who suffered from several serious and chronic medical conditions.

- Defendant Bannister deliberately violated [the] standard of care when she relied upon Defendant Pell and didn't perform a physical examination of Michael.

- Without examining Michael and checking his vitals, Defendant Bryant responded that she could order something "short-term" for him, but it would cost him $10. Defendant Bryant knew the standard of care required an assessment of Michael's health status, including her observations of him as well as his vital signs.

- Defendants Bannister, Pell and Bryant intentionally shirked their duties and intentionally endangered him when they were aware of Michael's serious medical needs and risk of serious injury and death, but they consciously refused to act until he had wasted away, and the cancer had already spread.

Doc. 21-1, ¶¶37, 38, 39, 230, 293, 306, 308, 309, 319, 322, 324, 326, 327 and 362.  These statements describe a scenario where Defendants were so indifferent to Michael's medical needs that if they were not *actually* aware of Michael's condition, then they should have been aware if they had carried out their obligations as health care personnel. This alleged indifference to Michael's medical needs hastened Michael's death, causing unnecessary pain and suffering.

The Court finds that the factual assertions in Plaintiff's proposed complaint sufficiently describe Defendants' alleged conduct under the legal theories raised in that pleading. They meet

the plausibility standard under *Iqbal-Twombly* and sufficiently withstand Defendant's specificity and futility challenges under Rule 12(b)(6).

**III.     Defendants' Pending Motion to Dismiss is Denied Without Prejudice**

Defendants Pell and Bryant have filed a motion to dismiss Count 1 of the Amended Complaint (Doc. 13).  Because Plaintiff is allowed to file a second amended complaint, the Court hereby DENIES the pending motion to dismiss without prejudice, as it now moot. *See May v. Segovia*, 929 F.3d 1223, 1228–29 (10th Cir. 2019) (an amended complaint, as the operative complaint, supersedes the original complaint's allegations). Defendants may re-file a motion to dismiss after Plaintiff files the second amended complaint.

The Court has found that Defendant's objections to Plaintiff's request to amend are meritless. They also border on being frivolous—no objection came close to being worthy of serious consideration, and the Court at times wondered if the purpose of Defendant's opposition to Plaintiff's request to amend the complaint was solely to annoy Plaintiff.  Defendant will now have the opportunity to re-file a motion to dismiss following Plaintiff's filing of the proposed amended complaint, and defense counsel should be aware that pleadings of the same ilk may invite Court-imposed sanctions—or at least invitations to Plaintiff's counsel to request the same.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint **(Doc. 21)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that the Court's ruling on Plaintiff's motion to amend renders the Motion to Dismiss Count 1 of the Amended Complaint filed by Defendants Pell and Bryant **(Doc. 13)** as MOOT, and that motion is hereby DENIED WITHOUT PREJUDICE;

**IT IS FINALLY ORDERED** that Plaintiff shall file the proposed second amended complaint **on or before two (2) weeks from the entry of this Memorandum Opinion and Order**.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE