IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHRIS OROSCO, Personal Representative
of the Wrongful Death Estate of
MICHAEL ROSS OROSCO, deceased,

      Plaintiff,

v.

                                                        Case No. 2:21-cv-01007-MLG-GJF

DARLA BANNISTER, MARLENA PELL,
and RHONDA BRYANT,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Darla Bannister's Motion for Summary Judgment filed on May 5, 2023. Doc. 115. Plaintiff[1] Chris Orosco, personal representative of the wrongful death estate of Michael Ross Orosco, deceased, filed a response in opposition, Doc. 121, to which Bannister replied. Doc. 129. Having reviewed the parties' submissions and the applicable law, and having held a hearing on October 4, 2023, the Court grants the motion with respect to Plaintiff's constitutional deliberate indifference claim and declines to exercise supplemental jurisdiction over the remaining state law claim.

### BACKGROUND[2]

Orosco was booked into Eddy County Detention Center ("ECDC") on December 4, 2018.

---

[1] The Court refers to Chris Orosco as "Plaintiff" and Michael Ross Orosco as "Orosco."

[2] The following facts are undisputed unless otherwise noted.

Doc. 115 at 2 ¶ 1. At that time, Bannister was ECDC's Medical Director.[3] *Id.* at ¶ 2. Her role included providing "onsite physicals, examinations, subsequent prescription of care, and referrals for hospitalization or other care as needed."[4] Doc. 115-2 at 11. She was ultimately responsible for "[c]linical decisions and actions concerning incarcerated individuals' health care needs." *Id.* She also had "final decision-making authority on all clinical issues." *Id.*

During the intake process, Orosco reported several medical conditions at the time of booking. He reported a history of heroin use and the possibility of heroin withdrawal while in custody. Doc. 115-3. Another intake form, titled "Master Problems List," indicated that Orosco suffered from hepatitis C, hypertension, hypothyroidism, anxiety, and PTSD. Doc. 121-16. While he also reported a right shoulder injury, he denied any other medical conditions. Doc. 121-4; Doc. 115-3 at 2.

Between January and March 2019, Orosco submitted at least two documented medical request forms. On January 2, he submitted a form for over-the-counter allergy medication to address what he perceived as "hay fever." Doc. 115-4; *see also* Doc. 115 at 2-3 ¶ 5. An ECDC staff nurse approved the request and "order[ed] a 30 day supply [of] Claritin." Doc. 115-4. Later

---

[3] As the Court sees it, the medical director of a detention facility manages a number of demanding responsibilities including serving as the "final decision-making authority on all clinical issues" for all incarcerated inmates at the facility, consulting with on-duty nursing staff, training medical staff, and providing routine reports, among other duties. Doc. 115-2 at 11; *see, e.g., id.* at 11-12 (detailing Bannister's scope of work as Medical Director). For this role, Bannister was paid roughly $10,000 per month to be on-call twenty-four hours a day, seven days a week, yet she was only on-site at ECDC on "Monday[s], Wednesday[s] and Friday[s]" between 11:30 a.m. to 1:30 p.m. Doc. 115-2 at 1, 11; Doc. 121-1 at 63:14-22. Although the concern is immaterial for the purposes of this memorandum opinion, the Court nonetheless questions whether such compensation for such little time spent on-site for a demanding position is appropriate given the needs of such a vulnerable population.

[4] The parties dispute the scope of Bannister's responsibilities. Doc. 115 at 2 ¶ 3; Doc. 121 at 5 ¶ 3. The description above construes the facts in the light most favorable to Plaintiff. *See Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

that month, Orosco submitted a request to address what he thought was heartburn. Doc. 121-25 (medical request form). Significantly, he checked off a box on the form to indicate that he did not experience this issue before he was arrested. *Id.* An ECDC staff nurse approved this request but noted that, while the facility could "order something short-term," he may want to "order off commissary." *Id.*

By March, Orosco's medical requests became increasingly dire. In an undated medical request form from March 2019, he reported the following: "I am having daily problems with the digestion of food. The food doesn't want to go down to digest. I am continually throwing it back up. I feel I can't swallow nor breathe with it blocking my passage. Causing me to throw up. Need to see [d]oc please." Doc. 121-19. He indicated that this problem began before he was arrested and had been going on for a "few months." *Id.* An ECDC staff nurse addressed the request on March 23 and ordered a liquid diet and a "nurse re-check [] as needed." *Id.* Then, on March 27, a different staff nurse made contact with Orosco during a medication pass and he reported to her that he was experiencing increased pain. Doc. 121-23 at 127:12-20. The nurse filled out a medical form on his behalf listing his symptoms as the following: "epigastric pain has increased," nausea once per week, untreated history of hepatitis C. Doc. 115-5. The following day, on March 28, Bannister reviewed this form, ordered tests, and prescribed a forty milligrams daily dose of Protonix for Orosco. *Id.*; Doc. 115 at 3 ¶ 6; Doc. 121 at 7 ¶ 6.[5] After the lab results were received, ECDC staff nurses reviewed the results with Orosco. *Id.* at ¶ 7; Doc. 115-6. Bannister subsequently referred Orosco to an outside provider for a "GI consult." Doc. 115-6; Doc. 115 at 3 ¶ 7; Doc. 121 at 7 ¶ 7.

In April 2019, Orosco was examined by at least two providers, yet his symptoms worsened. On April 5, as ordered by Bannister, Dr. Vythilingam examined Orosco and scheduled him for a

---

[5] Protonix is a medication used to treat gastrointestinal symptoms. Doc. 115 at 3 ¶ 6.

colonoscopy and an endoscopy to be performed on April 11. Doc. 115-7; Doc. 115-8; Doc. 115 at 3 ¶¶ 8-9; Doc. 121 at 7-8 ¶¶ 8-9. The results from the colonoscopy and endoscopy were received by the medical provider on April 11 and were sent to ECDC staff on April 17. Doc. 115 at 3 ¶ 10. The findings confirmed for the first time that Orosco had a "malignant tumor" indicative of "adenocarcinoma," a form of esophageal cancer. Doc. 115-9.

On April 19, during a medication pass, a staff nurse observed that Orosco appeared pale and notified Bannister. Doc. 121-1 at 195:6-24. Bannister filled out a provider visit form noting that Orosco presented with "severe pallor," that he was "coughing up blood," that he "has not been able to keep food down," has had "episodes of vomiting," and had not had a bowel movement in five days. Doc. 121-24. She indicated on the form that Orosco had been diagnosed with esophageal cancer. *Id.* She then sent Orosco to the emergency room, ordered lab tests, and prescribed fifty milligrams of Tramadol for pain mitigation. *Id.*; Doc. 115 at 4 ¶ 13. Several days later, on April 23, another provider (Dr. Bulbul) examined Orosco and reviewed his surgical pathology report. Doc. 115 at 4 ¶ 14; Doc. 115-13; Doc. 121 at 9 ¶ 14. On April 26, Orosco was then transferred from ECDC to Central New Mexico Correctional Facility. Doc. 115 at 4 ¶ 15. On June 28, 2019, Orosco died from complications caused by esophageal carcinoma. Doc. 33 at 30 ¶ 305.

Plaintiff filed a lawsuit against Bannister and two staff nurses alleging two claims: (1) an Eighth Amendment claim for deliberate indifference and (2) a state law claim for medical negligence. *See generally* Doc. 33. The claims against the defendant staff nurses were settled and dismissed from the suit. Doc. 126; Doc. 130. Bannister is the lone remaining defendant.

## LEGAL STANDARD

A party is entitled to summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he moving

party bears the initial burden of presenting evidence to show the absence of a genuine issue of material fact." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). The moving party may do so "either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Id.* Once this burden is met, the non-moving party then "set[s] forth specific facts showing there is a genuine issue for trial." *Id.* The Court draws all reasonable inferences and resolves all factual disputes in favor of the non-moving party. *Birch*, 812 F.3d at 1251.

## DISCUSSION

Bannister argues that she is entitled to summary judgment on Plaintiff's state claim of medical negligence because he cannot show that Bannister breached the standard of care or that the breach was the proximate cause of Orosco's death. Doc. 115 at 9. And since Plaintiff's constitutional deliberate indifference claim involves a "higher standard" than medical negligence, Bannister argues that the constitutional claim necessarily fails. *Id.* at 6, 10-11. Plaintiff opposes the motion, asserting that genuine issues of material fact remain as to both claims that preclude summary judgment. Doc. 121 at 21. Specifically, Plaintiff notes that it is disputed whether "Bannister and her staff knew that [Orosco] was at substantial risk of harm from a serious medical condition." *Id.* at 23. For the following reasons, the Court concurs with Bannister and grants summary judgment in her favor on the constitutional claim.

**I.      Bannister was not deliberately indifferent to Orosco's serious medical needs.**

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To establish a claim for deliberate indifference, a plaintiff must prove both an objective and a subjective component. *See*

5

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (explaining that the objective component involves showing that the medical needs were "sufficiently serious" and that the subjective component involves an inquiry into whether the prison official had a "sufficiently culpable state of mind" (citations omitted)). Here, the Court concludes that Plaintiff has sufficiently raised an inference to demonstrate the objective element: that Orosco's medical need was sufficiently serious. However, Plaintiff has failed to raise an inference regarding the subjective component: that Bannister knew of *and* disregarded an excessive risk to Orosco's health or safety.

**A.   Orosco's medical need was sufficiently serious.**

"[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal quotation marks omitted). There is no question, and the parties do not seem to dispute, that Orosco's medical need meets this standard. *See* Doc. 121 at 23. Although he was not formally diagnosed with esophageal cancer before his booking at ECDC and it was not until (on or around) April 11, 2019, that he was formally diagnosed by Dr. Vythilingam with adenocarcinoma (esophageal cancer), Doc. 115-9, it appears that the symptoms arising from the cancer were so obvious that even Orosco's fellow detainees could easily recognize the need for a doctor's attention. Specifically, other detainees noted Orosco's deteriorating condition, testifying that he was "coughing up blood and [had] bloody stools." Doc. 121 at 20 ¶¶ bbb, eee. They even advocated on Orosco's behalf for medical attention and encouraged him to go to the medical department to address the issue. *Id.* at 19-20 ¶¶ aaa-bbb. Because Orosco's medical need was so obvious (even to lay people), the Court concludes that it was sufficiently serious to satisfy the objective component of the deliberate indifference analysis.

**B.      Even if Bannister knew of an excessive risk to Orosco's health or safety, Plaintiff has failed to raise an inference that Bannister disregarded that risk.**

The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [] must also draw the inference." *Id.* "A prisoner may satisfy the subjective component by showing that [the] defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of her condition." *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005). However, inadvertent failure to provide adequate medical care or a negligent diagnosis "fail[s] to establish the requisite culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

In this case, Bannister argues that she acted "promptly, appropriately, and within the standard of care" and therefore was not deliberately indifferent. Doc. 115 at 10.[6] Plaintiff disagrees, claiming that Bannister's failure to conduct the required assessment and continued monitoring of Orosco's medical conditions at the moment he entered ECDC (which included a right shoulder injury, heroin withdrawal, elevated blood pressure, hypertension, hypothyroidism, hepatitis C, anxiety, and PTSD) constituted deliberate indifference because it allowed his undiagnosed cancer to spread. Doc. 121 at 23-24.

The Court concludes that Plaintiff has failed to raise an inference as to the subjective component. As an initial matter, the Court finds that Bannister knew of the excessive risk of the

---

[6] Bannister also argues that she cannot be held liable under a theory of *respondeat superior* unless an affirmative link exists between the alleged constitutional deprivation and her personal participation. Doc. 115 at 11. The Court agrees but nonetheless does not address this argument because Plaintiff's theory is not based on Bannister's personal involvement in her supervisory capacity. Rather, the Court reads the amended complaint as alleging liability based on Bannister's "failure to respond actively or effectively" and under a gatekeeper theory. Doc. 33 at 22 ¶¶ 224-25.

symptoms to Orosco's health on March 28, 2019, at the earliest. Her own notes from that day indicate that she was made aware of Orosco's epigastric pain, nausea, and history of untreated hepatitis C. *See* Doc. 115-5. Despite Plaintiff's contentions, *see* Doc. 121 at 7 ¶ 6, the record does not support a finding that Bannister was aware of Orosco's epigastric pain or nausea prior to March 28, 2019, when she signed off on the "Situation, Background, Assessment, Recommendation" ("SBAR") report. *See* Doc. 115-5.

Even if Plaintiff can show that Bannister *knew* of an excessive risk to Orosco's health or safety, Plaintiff has not raised an inference that she *disregarded* that risk. It is undisputed that Bannister responded to Orosco's March 27 complaint. The following day, on March 28, she reviewed the SBAR report, ordered tests and prescribed a forty milligrams daily dose of Protonix for Orosco. Doc. 115-5. After the lab results were received, the ECDC staff nurses reviewed the results with Orosco and, after this meeting, Bannister referred Orosco for a "GI consult." Doc. 115 at 3 ¶ 7; Doc. 115-6; Doc. 121 at 7 ¶ 7. Then, on April 19 (a few days after the results from the GI exams were received by ECDC staff), Orosco presented to Bannister with "severe pallor" and complained of abdominal pain, coughing up blood, inability to "keep food down," and vomiting. Doc. 115-10. In response, Bannister sent Orosco to the emergency room; ordered lab tests "STAT," meaning "with urgency"; and prescribed fifty milligrams of Tramadol. *Id.* Because she responded and did not delay ordering treatment, it cannot be said that she was deliberately indifferent. *See Mata*, 427 F.3d at 755; *compare Mathison v. Wilson*, 719 F. App'x 806, 809 (10th Cir. 2017) (holding that the plaintiff failed to raise an inference that any of the defendants were deliberately indifferent to his knee pain where they "continuously responded to the risk by treating his pain with injections and medication, x-rays, an outside consultation and a request for surgery"), *with Sealock v. Colo.*, 218 F.3d 1205, 1208, 1210-11 (reversing summary judgment in favor of a

8

correctional sergeant where the inmate told the sergeant he was having chest pain and it might be a heart attack, but the sergeant said he could do nothing for him because no one was at clinical services, it was snowing, and it would take an hour to warm the van). In sum, Bannister's actions do not evince a sufficiently culpable state of mind for Plaintiff to prevail on summary judgment.

It is important to tease out two specific points from Plaintiff's arguments. First, Plaintiff argues that Bannister should have been aware of Orosco's serious medical need as early as December 4, 2018, and that her failure to conduct the required assessment and continued monitoring of Orosco's medical conditions at that moment constituted deliberate indifference because it allowed the undiagnosed cancer to spread unabated. Doc. 121 at 23-24. The Court is unpersuaded.

Upon his booking at ECDC on December 4, 2018, Orosco reported a history of heroin use and the possibility of heroin withdrawal while in custody. Doc. 115-3. Other intake forms indicated that Orosco suffered from hepatitis C, hypertension, hypothyroidism, anxiety, and PTSD. Doc. 121-16. While he also reported a right shoulder injury, he denied any other medical conditions. Doc. 121-4; Doc. 115-3 at 2. Even assuming, *arguendo*, that Bannister knew that Orosco suffered from these ailments as early as December 4, 2018, the Court's conclusion would remain unchanged. This is because Orosco did not complain of any symptoms relating to his undiagnosed cancer upon his booking at ECDC nor did he disclose an esophageal cancer diagnosis to Bannister or on any of the intake forms. *Cf. Sanderfer v. Nichols*, 62 F.3d 151, 155 (6th Cir. 1995) (holding that a clinical health specialist was not deliberately indifferent where she incorrectly diagnosed an inmate's condition as bronchitis and the inmate—who ultimately died of heart failure—reported a history of asthma and high blood pressure but did not complain of hypertension). Symptoms

related to Orosco's undiagnosed cancer would only reveal themselves in early 2019[7] but were not disclosed to Bannister until March 28, 2019. Before then, the record presented does not show that Bannister was aware of conditions suggesting cancer. It is impossible for the Court to conclude as a matter of law that Bannister was deliberately indifferent to a medical condition she knew nothing about.[8] *See Sanderfer*, 62 F.3d at 155.

Second, Plaintiff argues that Bannister should have responded more effectively and more immediately to his March 2019 complaint. *See, e.g.*, Doc. 33 at 35 ¶ 351 ("Bannister's failure to respond actively or effectively on several occasions throughout [Orosco's] incarceration constituted deliberate indifference."); Doc. 121 at 7 ¶ 6 (disputing whether Bannister ordered a "complete work-up" because, despite Orosco's complaints, no vital signs were taken; whether she acted "immediately" because there is no indication in the record as to her response time; and whether the medication Bannister prescribed was a "more effective medication for gastrointestinal symptoms"). However, any alleged inadequacy in Bannister's response constitutes—at most—

---

[7] It is unclear exactly when Orosco's cell mate and neighboring detainees began noticing his deteriorating health. Orosco was housed with Christopher Hernandez at ECDC from December 2018 through March 1, 2019. Doc. 121 at 19 ¶ zz. Hernandez testified that Orosco began making medical requests "right away . . . like the third day he was there." Doc. 121-18 at 20:23-25-21:1-2. Then, "after . . . a month . . . [Orosco] didn't wanna get out [of the cell]." *Id.* at 27:5-14. By March 2019, Hernandez stated that Orosco appeared "pretty sick" and "was laid up most of the day." *Id.* at 34:11-20. Another inmate, Raymond Montoya, testified that he was housed at ECDC from 2018 to 2020 and was Orosco's neighbor in the pod unit in March 2019. Doc. 121-29 at 30:1-25; 34:4-14. He recalled Orosco "losing a lot of weight and getting real [sic] skinny" during the couple of months that they were neighbors. *Id.* at 32:17-25-33:1. While he could not recall the exact date on which he alerted a staff nurse about Orosco's vomiting blood, he stated that it was some time within two months of March 2019. *Id.* at 38:16-23. There is nothing in the record to suggest these concerns were relayed to Bannister.

[8] Plaintiff offers no expert testimony that the actions Bannister *should* have taken, i.e., ordering a 14-day health assessment or monitoring his hepatitis C condition, *see* Doc. 121 at 15-16 ¶¶ t, x, z, would have revealed Orosco's cancerous mass. Indeed, the parties do not dispute that Orosco's cancer was terminal: he would have eventually passed away from the cancer regardless of whether these actions were taken. Doc. 181 at 80:19-21.

negligence and not deliberate indifference. *See Farmer*, 511 U.S. at 835-37 (explaining that deliberate indifference is "a state of mind more blameworthy than negligence"); *Sanderfer*, 62 F.3d at 155 (holding that, although the doctor should have checked the inmate's medical records, her failure to do so was at most negligence and not deliberate indifference). To be sure, taking some action—no matter how minimal—does not absolve a medical provider from damages. As the Tenth Circuit put it, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1139 (10th Cir. 2023) (emphasis in original). Thus, Bannister is not necessarily shielded from liability merely because she did "something" in response to Orosco's complaints. The inquiry, rather, is whether she "fulfilled [her] sole obligation to refer or otherwise afford access to medical personnel capable of evaluating [Orosco's] treatment needs when such an obligation [arose]." *Id.* The Court finds that she did that here: when the obligation arose on or around March 27, she reviewed the SBAR report, ordered lab tests and prescribed a forty milligrams daily dose of Protonix for Orosco. On April 1, she referred Orosco for a GI consultation. Orosco then met with a doctor for that consultation on April 5. By taking these actions, Bannister fulfilled her sole obligation to refer Orosco to medical personnel capable of evaluating his treatment needs as soon as the obligation arose. The undisputed facts simply do not support the conclusion that Bannister deliberately disregarded Orosco's symptoms or the excessive risk stemming from those symptoms.

Ultimately, "an official's failure to alleviate a significant risk that [she] should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. While Bannister's response to Orosco's medical need may not be worthy of acclaim, and the attendant facts are troubling, the Court cannot conclude that her actions (or inaction) give rise to an Eighth Amendment violation. Simply put,

11

Plaintiff has failed to raise an inference on the subjective component and thus summary judgment on the deliberate indifference claim is warranted in Bannister's favor.

**II.     The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for medical negligence.**

Under 28 U.S.C. § 1367, a federal court has supplemental jurisdiction over certain state law claims. However, "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998). In this case, the Court has dismissed the sole federal claim before it by granting summary judgment in Bannister's favor. What remains is Plaintiff's state-based claim for medical negligence. The Court declines to exercise supplemental jurisdiction over this claim and thus dismisses it without prejudice.[9]

## CONCLUSION

For the foregoing reasons, the Court grants Bannister's motion with respect to the constitutional claim. Doc. 115.

It is hereby ordered that summary judgment is entered in favor of Bannister on the federal deliberate indifference claim. That claim is hereby dismissed with prejudice. The remaining state medical negligence claim is hereby dismissed without prejudice. The Court shall issue a Rule 58 judgment separately. It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

---

[9] The Court notes the period of limitations for this case has been "tolled while the claim is pending" and will continue to be tolled "for a period of 30 days after it is dismissed unless [New Mexico] law provides for a longer tolling period." 28 U.S.C. § 1367(d).